Filed: 6/19/2020 4:03 PM
Clerk
Huntington County, Indiana

STATE OF INDIANA            )               IN THE HUNTINGTON SUPERIOR COURT
                            ) SS:
COUNTY OF HUNTINGTON   )               CAUSE NO.

EDMOND ASHER, PAULA BLAIR,              )
KRISTEN HELVIE, ESTALENE CHAPPEL,      )
ERIC CHAPPEL, JANE CLARK, TIM          )
DAVIS, JOE DAVIS, DAVID SMITH,         )
GLENN FISHER, BECKY HOWARD, DON        )
KEEL, JOSHUA KEEL, CYNDI ROSS,         )
ROXANNE GRAY, LANCE GRAY, JAMES        )
KENNY SOLLARS, LEOTA HAMPTON,          )
GERALD HAMPTON, KAREN HOULIHAN,        )
LUCAS ROBERTS, MELINDA ROBERTS,        )
DAMIAN SHEPHERD, TAMMERA               )
HYSONG, DAVE HYSONG, CAROLE            )
KELLER, CHELSI STRAKA, ETHAN           )
STRAKA, JADE JOHNSON, VALERIE          )
NICHOLS, BILL NICHOLS, VICKIE          )
BAKER, DEANNA KOCHENSPARGER,           )
DAN KOCHENSPARGER, ASHLY               )
KOCHENSPARGER, RACHEL                  )
KOCHENSPARGER, PAXTEN DAGGETT,         )
MADDOX ADAMS, TINA OPPY, MARK          )
OPPY, MARK OPPY, JR., ANNETTE OPPY,    )
LINDA PHILLIPS, ALEX POWELL,           )
LARRY RAINWATER, SHARON                )
RAINWATER, ANNETTE SHIVELY,            )
RANDY SHIVELY, KAYLA YOUNG,            )
MYRTLE YOUNG, CARLA BRANE, TINA        )
BRADLEY, DICK REED, JOHN               )
HARSHBARGER, JANICE                    )
HARSHBARGER, ANNIAH MARSHALL,          )
DAZI MARSHALL, JEFF MARSHALL,          )
MELINDA MARSHALL, MICHAEL              )
SLONE, DENNIS SLONE, SARA SLONE,       )
ANNA STANDAFER, BRANDON                )
STANDAFER, HALEY STANDAFER,            )
ALLIE FELTNER, ANGELA FELTNER,         )
TAMMY EDDINGFIELD, KELSY               )
ROBERTS, CORY FELTNER, SELINA          )
FELTNER, PAMELA TACKETT,               )
RAYMOND TACKETT, JUDITH                )
WALLACE, RUSSELL WALLACE,              )
BRENDA ROBERSON, MARK WALTERS,         )
and the TOWN OF ANDREWS, INDIANA,      )

|                                               |     |
|-----------------------------------------------|-----|
| Plaintiffs,                                   | )   |
|                                               | )   |
|                                               | )   |
| vs.                                           | )   |
|                                               | )   |
|                                               | )   |
| RAYTHEON TECHNOLOGIES                         | )   |
| CORPORATION f/k/a United Technologies         | )   |
| Corporation, LEAR CORPORATION EEDS            | )   |
| AND INTERIORS, LLC as successor to            | )   |
| United Technologies Automotive, Inc.,         | )   |
| ANDREWS DAIRY STORE, INC., L.D.               | )   |
| WILLIAMS, INC., CP PRODUCT, LLC, as           | )   |
| successor to Preferred Technical Group, Inc., | )   |
| and LDW Development, LLC,                      | )   |
|                                               | )   |
| Defendants.                                   | )   |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
## AND REQUEST FOR JURY TRIAL

Plaintiffs Edmond Asher, Paula Blair, Kristen Helvie, Estalene Chappel, Eric Chappel,

Jane Clark, Tim Davis, Joe Davis, David Smith, Glenn Fisher, Becky Howard, Don Keel, Joshua

Keel, Cyndi Ross, Roxanne Gray, Lance Gray, James Kenny Sollars, Leota Hampton, Gerald

Hampton, Karen Houlihan, Lucas Roberts, Melinda Roberts, Damian Shepherd, Tammera

Hysong, Dave Hysong, Carole Keller, Chelsi Straka, Ethan Straka, Jade Johnson, Valerie

Nichols, Bill Nichols, Vickie Baker, Deanna Kochensparger, Dan Kochensparger, Ashly

Kochensparger, Rachel Kochensparger, Paxten Daggett, Maddox Adams, Tina Oppy, Mark

Oppy, Mark Oppy, Jr., Annette Oppy, Linda Phillips, Alex Powell, Larry Rainwater, Sharon

Rainwater, Annette Shively, Randy Shively, Kayla Young, Myrtle Young, Carla Brane, Tina

Bradley, Dick Reed, John Harshbarger, Janice Harshbarger, Anniah Marshall, Dazi Marshall,

Jeff Marshall, Melinda Marshall, Michael Slone, Dennis Slone, Sara Slone, Anna Standafer,

Brandon Standafer, Haley Standafer, Allie Feltner, Angela Feltner, Tammy Eddingfield, Kelsy

Roberts, Cory Feltner, Selina Feltner, Pamela Tackett, Raymond Tackett, Judith Wallace,

2

Russell Wallace, Brenda Roberson, Mark Walters, and the Town of Andrews, Indiana, (collectively "Plaintiffs"), by counsel, allege and state:

## I.  NATURE OF ACTION

1.      Plaintiffs bring this action to address the pervasive and dangerous contamination within the Town of Andrews, Indiana (the "Town"). Two overlapping, subsurface plumes of contamination, consisting primarily of chlorinated solvents (including trichloroethylene ("TCE")) and petroleum, have contaminated the Town's drinking water aquifer, have entered sewer and other utility lines, have caused a nuisance and considerable personal injury and property damage, and constitute an imminent and substantial endangerment to human health and the environment in, under, and surrounding, the Plaintiffs' properties in the Town.

2.      In addition, Plaintiffs seek an order from this Court under Indiana's Environmental Legal Action statute, Indn. Code § 13–30–9–2, directing Defendants Raytheon Technologies Corporation ("RTX," formerly known as United Technologies Corporation ("UTC")), Lear Corporation Eeds and Interiors, LLC. ("Lear"), CP Product, LLC ("CP Product"), Andrews Dairy Store, Inc. ("Andrews Dairy"), L.D. Williams, Inc. ("L.D. Williams"), and LDW Development LLC ("LDW Development") (collectively, the "Defendants") to immediately take all actions necessary to properly remediate the contamination, and to pay for Plaintiffs' costs of litigation pursuant to Ind. Code § 13–30–9–3(a)(6).

3.      The Defendants were owners and/or operators of a factory which operated for a significant period of time as "United Technologies Automotive" ("UTA") [Defendants RTX, Lear, and CP Product, collectively the "UTA Defendants"] and a gas station [Defendants Andrews Dairy, L.D. Williams, and LDW Development, collectively the "Gas Station Defendants"], in the Town, from which hazardous chemicals were dumped and/or released into

the environment. Once in the environment, those hazardous chemicals traveled underground

throughout the Town in the form of contaminated groundwater and invisible toxic vapors.

4.　　The toxic vapors caused by Defendants' hazardous chemical releases migrated

throughout the Town's utility lines, and have entered Plaintiffs' homes and properties through

vapor intrusion.

## II.　　THE PLAINTIFFS

5.　　Plaintiff Edmond Asher is a resident of Huntington County, Indiana, and currently

resides at 4015 W. 100 N., Huntington, Indiana. Asher resided at 373 North Market Street,

Andrews, Indiana, from approximately 1985 to 1999, and at the Antioch Mobile Home Park,

2000 Wabash Avenue, Andrews, Indiana, from approximately 1982 to 1985.

6.　　Plaintiff Paula Blair is a resident of Wabash County, Indiana, and currently

resides at 305 North Walnut Street, North Manchester, Indiana. Blair resided at 433 North

Market Street, Andrews, Indiana, from approximately 1986 to 1996.

7.　　Plaintiff Kristen Helvie is a resident of Huntington County, Indiana, and currently

resides at 1501 South Jackson Street, Huntington, Indiana. Helvie resided at 433 North Market

Street, Andrews, Indiana, from approximately 1986 to 2000, and at 420 North Jackson Street,

Andrews, Indiana, from 1982 to 1984.

8.　　Plaintiff Estalene Chappel is a resident of Huntington County, Indiana, and

currently resides at 319 North Main Street, Andrews, Indiana. Chappel has resided at that

address from 2001 to the present, and previously resided at 85 North Jackson Street, Andrews,

Indiana, from 1992 to 2001.

9.　　Plaintiff Eric Chappel is a resident of Huntington County, Indiana, and currently

resides at 319 North Main Street, Andrews, Indiana. Chappel has resided at that address from

4

2001 to the present, and previously resided at 85 North Jackson Street, Andrews, Indiana, from 1992 to 2001, and at 240 West McKeever Street, Andrews, Indiana, from approximately 1982 to 1992.

      10.    Plaintiff Jane Clark is a resident of Huntington County, Indiana, and currently resides at 133 South Main Street, Andrews, Indiana. Clark has resided at that address from 1957 to 1980, and from 2008 to the present.

      11.    Plaintiff Tim Davis is a resident of Huntington County, Indiana, and currently resides at 431 East California, Andrews, Indiana. Davis has resided at that address from 2010 to the present, and previously resided at 487 East McKeever Street, Andrews, Indiana, from approximately 2006 to 2007.

      12.    Plaintiff Joe Davis is a resident of Huntington County, Indiana, and currently resides at 543 North Jackson Street, Andrews, Indiana. Davis has resided at that address from 2013 to the present, and previously resided at 431 East California Street, Andrews, Indiana, from approximately 2010 to 2013, and at 487 East McKeever Street from approximately 2006 to 2007.

      13.    Plaintiff David Smith is a resident of Huntington County, Indiana, and currently resides at 676 North Colorado Street, Andrews, Indiana. Smith has resided at that address from approximately 2006 to the present.

      14.    Plaintiff Glenn Fisher is a resident of Huntington County, Indiana, and currently resides at 436 North Market Street, Andrews, Indiana. Fisher has resided at that address from approximately 1974 to the present.

      15.    Plaintiff Becky Howard is a resident of Huntington County, Indiana, and currently resides at 491 West Wabash Street, Andrews, Indiana. Howard has resided at that address from approximately 1987 to the present, and at 820 North Market Street for approximately two years

5

in the 1980s, at a home by Loon Creek in Andrews, Indiana, for one year in the early 1980s, and

at a house on Terrel Street in Andrews, Indiana, from 1960 to 1976.

      16.     Plaintiff Don Keel is a resident of Huntington County, Indiana, and currently

resides at 491 West Wabash Street, Andrews, Indiana. Keel has resided at that address from

approximately 1987 to the present, and at 820 North Market Street for approximately two years

in the 1980s, and at a home by Loon Creek in Andrews, Indiana, for two years in the early

1980s.

      17.     Plaintiff Joshua Keel is a resident of Huntington County, Indiana, and currently

resides at 491 West Wabash Street, Andrews, Indiana. Keel has resided at that address from

approximately 2002 to the present.

      18.     Plaintiff Cyndi Ross is a resident of Huntington County, Indiana, and currently

resides at 1570 Poplar Street, Huntington, Indiana. Ross resided at 431 West Wabash Street,

Andrews, Indiana, from approximately 1989 to 2008, at 937 Jackson Street, Andrews, Indiana,

from approximately 1986 to 1989, at 436 North Market Street, Andrews, Indiana, from

approximately 1979 to 1986, at the Antioch Mobile Home Park, 2000 Wabash Avenue,

Andrews, Indiana, from approximately 1976 to 1977, and at a home on Terrel Street, Andrews,

Indiana, from approximately 1966 to 1976.

      19.     Plaintiff Roxanne Gray is a resident of Huntington County, Indiana, and currently

resides at 331 North Market Street, Andrews, Indiana. Gray has resided at that address from

approximately 1986 to the present.

      20.     Plaintiff Lance Gray is a resident of Wabash County, Indiana, and currently

resides at 5715 South 525 East, Wabash, Indiana. Gray resided at 331 North Market Street,

Andrews, Indiana, from approximately 1994 to 1995, and on weekends and holidays from 1986

6

to 1993.

21.     Plaintiff James Kenny Sollars is a resident of Wabash County, Indiana, and currently resides at 206 South Main Street, La Fontaine, Indiana. Sollars resided at 331 North Market Street, Andrews, Indiana, from approximately 1986 to 1998.

22.     Plaintiff Leota Hampton is a resident of Huntington County, Indiana, and currently resides at 252 West Terrel Street, Andrews, Indiana. Hampton has resided at that address from approximately 1975 to the present, and previously resided at an apartment on Main Street in Andrews, Indiana, from approximately 1974 to 1975.

23.     Plaintiff Gerald Hampton is a resident of Huntington County, Indiana, and currently resides at 252 West Terrel Street, Andrews, Indiana. Hampton has resided at that address from approximately 1975 to the present.

24.     Plaintiff Karen Houlihan is a resident of Huntington County, Indiana, and currently resides at 240 Columbia Street, Andrews, Indiana. Houlihan has resided at that address from approximately 1978 to the present.

25.     Plaintiff Lucas Roberts is a resident of Wabash County, Indiana, and currently resides at 1010 Sivey Court, Wabash, Indiana. Roberts previously resided at 382 Jefferson Street, Andrews, Indiana, from approximately 2004 to 2005, and at 240 Columbia Street, Andrews, Indiana, on and off (including on weekends and during the Summer), during his entire life.

26.     Plaintiff Melinda Roberts is a resident of Wabash County, Indiana, and currently resides at 1010 Sivey Court, Wabash, Indiana. Roberts previously resided at 382 Jefferson Street, Andrews, Indiana, from approximately 2004 to 2005.

27.     Plaintiff Damian Shepherd is a resident of Wabash County, Indiana, and currently resides at 332 Indiana Street, Wabash, Indiana. Roberts previously resided at 382 Jefferson

7

Street, Andrews, Indiana, from approximately 2004 to 2005.

28.     Plaintiff Tammera Hysong is a resident of Huntington County, Indiana, and currently resides at 1950 Chief Turtle Court, Huntington, Indiana. Hysong previously resided at 139 North Jackson Street, Andrews, Indiana, from approximately 1987 to 1997, and at 863 North Market Street, Andrews, Indiana, from approximately 1979 to 1987.

29.     Plaintiff Dave Hysong is a resident of Huntington County, Indiana, and currently resides at 1950 Chief Turtle Court, Huntington, Indiana. Hysong previously resided at 139 North Jackson Street, Andrews, Indiana, from approximately 1987 to 1997, at 863 North Market Street, Andrews, Indiana, from approximately 1979 to 1987, and at 819 North Main Street, Andrews, Indiana, from approximately 1958 to 1979.

30.     Plaintiff Carole Keller is a resident of Huntington County, Indiana, and currently resides at 173 Terrel Street, Andrews, Indiana. Keller has resided at that address from approximately 1973 to the present, and previously resided at a house on Chestnut Street in Andrews, Indiana, from approximately 1971 to 1972, at a house on Bellville Avenue in Andrews, Indiana, from 1968 to 1970, and at a house at the corner of McKeever and Market Streets in Andrews, Indiana, in approximately 1968.

31.     Plaintiff Chelsi Straka is a resident of Huntington County, Indiana, and currently resides at 333 Mayne Street, Huntington, Indiana. Straka previously resided at 173 Terrel Street Andrews, Indiana, from approximately 1984 to 2003.

32.     Plaintiff Ethan Straka is a resident of Huntington County, Indiana, and currently resides at 173 Terrel Street, Andrews, Indiana. Straka has resided at that address on and off from approximately 2006 to 2013, and from approximately 2013 to the present.

33.     Plaintiff Jade Johnson is a resident of Huntington County, Indiana, and currently

8

resides at the Carriage Place Apartments on Hitzfield Street, in Huntington, Indiana. Johnson previously resided at 173 Terrel Street, Andrews, Indiana, from approximately 1997 to 2019.

34.     Plaintiff Valerie Nichols is a resident of Huntington County, Indiana, and currently resides at 186 South Jackson Street, Andrews, Indiana. Nichols has resided at that address from approximately 2016 to the present, and previously resided at 173 Terrel Street, Andrews, Indiana, from approximately 1973 to 1989, at a house on Chestnut Street, in Andrews, Indiana, from approximately 1971 to 1972, and at a house on Bellville Avenue, in Andrews, Indiana, from approximately 1969 to 1970.

35.     Plaintiff Bill Nichols is a resident of Huntington County, Indiana, and currently resides at 186 South Jackson Street, Andrews, Indiana. Nichols has resided at that address from approximately 2016 to the present, and previously resided at 886 North Colorado Street, Andrews, Indiana, from approximately 1992 to 2015.

36.     Plaintiff Vickie Baker is a resident of Huntington County, Indiana, and currently resides at 1240 North Michler Road, Huntington, Andrews, Indiana. Baker previously resided at 173 Terrel Street, Andrews, Indiana, from approximately 1973 to 1991, at 350 South Main Street, Andrews, Indiana, from 1991 or 1992 to 2000, and at a house on Chestnut Street in Andrews, Indiana, in approximately 1972.

37.     Plaintiff Deanna Kochensparger is a resident of Huntington County, Indiana, and currently resides at 150 North Market Street, Andrews, Indiana. Kochensparger has resided at that address from approximately 1962 to 1984, from 1991 to 1993, in 1998, and from 2001 to the present.

38.     Plaintiff Dan Kochensparger is a resident of Huntington County, Indiana, and currently resides at 150 North Market Street, Andrews, Indiana. Kochensparger has resided at

that address from approximately from 1991 to 1993, in 1998, and from 2001 to the present.

39.     Plaintiff Ashly Kochensparger is a resident of Huntington County, Indiana, and currently resides at 150 North Market Street, Andrews, Indiana. Kochensparger has resided at that address from approximately 2001 to the present.

40.     Plaintiff Rachel Kochensparger is a resident of Huntington County, Indiana, and currently resides at 612 Wabash Circle, Huntington, Indiana. Kochensparger resided at 150 North Market Street, Andrews, Indiana, from approximately 2001 to 2014, and 2018 to 2019.

41.     Plaintiff Paxten Daggett is a resident of Huntington County, Indiana, and currently resides at 612 Wabash Circle, Huntington, Indiana. Daggett resided at 150 North Market Street, Andrews, Indiana, from approximately 2018 to 2019.

42.     Plaintiff Maddox Adams is a resident of Huntington County, Indiana, and currently resides at 612 Wabash Circle, Huntington, Indiana. Adams resided at 150 North Market Street, Andrews, Indiana, from approximately 2018 to 2019.

43.     Plaintiff Tina Oppy is a resident of Huntington County, Indiana, and currently resides at 750 E Washington Street, Huntington, Indiana. Oppy resided at 174 North Market Street, Andrews, Indiana, from approximately 2010 to 2018, and at the Vernon Manor Mobile Home Park, 312 Vernon Manor, Andrews, Indiana, in approximately 1995.

44.     Plaintiff Mark Oppy is a resident of Huntington County, Indiana, and currently resides at 750 E Washington Street, Huntington, Indiana. Oppy resided at 174 North Market Street, Andrews, Indiana, from approximately 2010 to 2018, at the Vernon Manor Mobile Home Park, 312 Vernon Manor, Andrews, Indiana, in approximately 1995, and at 291 East McKeever Street, Andrews, Indiana, from approximately 1962 to 1995.

45.     Plaintiff Mark Oppy, Jr., is a resident of Huntington County, Indiana, and

10

currently resides at 750 E Washington Street, Huntington, Indiana. Oppy resided at 174 North Market Street, Andrews, Indiana, from approximately 2010 to 2018.

46.     Plaintiff Annette Oppy is a resident of Huntington County, Indiana, and currently resides at 311 Vernon Manor, Andrews, Indiana. Oppy has resided at that address since 2020, and previously resided at 174 North Market Street, Andrews, Indiana, from approximately 2010 to 2018.

47.     Plaintiff Linda Phillips is a resident of Huntington County, Indiana, and currently resides at 156 North Main Street, Andrews, Indiana. Phillips has resided at that address from approximately 1967 to 1981, and from 2014 to the present, and she also previously lived at 255 West Jefferson Street, Andrews, Indiana, from approximately 1957 to 1967.

48.     Plaintiff Alex Powell is a resident of Huntington County, Indiana, and currently resides at 148 North Main Street, Andrews, Indiana. Powell has resided at that address from approximately 1994 to the present.

49.     Plaintiff Larry Rainwater is a resident of Huntington County, Indiana, and currently resides at 354 North Market Street, Andrews, Indiana. Rainwater has resided at that address from approximately 2002 to the present.

50.     Plaintiff Sharon Rainwater is a resident of Huntington County, Indiana, and currently resides at 354 North Market Street, Andrews, Indiana. Rainwater has resided at that address from approximately 2002 to the present.

51.     Plaintiff Annette Shively is a resident of Huntington County, Indiana, and currently resides at 205 North Cubberly Street, Andrews, Indiana. Shively has resided at that address from approximately 2013 to the present. She previously resided at: 421 South Pearl Street, Andrews, Indiana, from approximately 2004 to 2013; the Antioch Mobile Home Park in

11

Andrews, Indiana, in approximately 2004; 20 North Maple Street, Andrews, Indiana, from

approximately 2001 to 2004; 187 South Snowden, Andrews, Indiana, from approximately 1991

to 1998; 353 North Market Street, Andrews, Indiana, from approximately 1978 to 1979; the

Vernon Manor Mobile Home Park in Andrews, Indiana, from approximately 1972 to 1973; at a

home on Berry Street, Andrews, Indiana, from approximately 1971 to 1972; and a home on

Jackson Street, Andrews, Indiana, in approximately 1971.

52.     Plaintiff Randy Shively is a resident of Huntington County, Indiana, and currently

resides at 205 North Cubberly Street, Andrews, Indiana. Shively has resided at that address from

approximately 2013 to the present. He previously resided at: 421 South Pearl Street, Andrews,

Indiana, from approximately 2004 to 2013; the Antioch Mobile Home Park in Andrews, Indiana,

in approximately 2004; and 236 North Main Street, Andrews, Indiana, from approximately 1995

to 2004.

53.     Plaintiff Kayla Young is a resident of Huntington County, Indiana, and currently

resides at 500 South Clifton Street, Andrews, Indiana. Young has resided at that address from

approximately 2019 to the present, and previously resided part time at 1063 North Main Street,

Andrews, Indiana, from approximately 2009 to 2019 part time at 321 South Berry Street,

Andrews, Indiana, from approximately 2009 to 2012, and at a house on the corner of Market and

Ruby Streets in Andrews, Indiana, from approximately the early 1990s to 2004.

54.     Plaintiff Myrtle Young is a resident of Huntington County, Indiana, and currently

resides at 500 South Clifton Street, Andrews, Indiana. Young has resided at that address from

approximately 2019 to the present, and previously resided part time at 1063 North Main Street,

Andrews, Indiana, from approximately 2009 to 2019, part time at 321 South Berry Street,

Andrews, Indiana, from approximately 2009 to 2012, and at a house on the corner of Market and

Ruby Streets in Andrews, Indiana, from approximately the early 1990s to 2004.

55.     Plaintiff Carla Brane is a resident of Huntington County, Indiana, and currently resides at 236 North Market Street Andrews, Indiana. Brane has resided at that address from approximately 1992 to the present.

56.     Plaintiff Tina Bradley is a resident of Huntington County, Indiana, and currently resides at 353 North Market Street, Andrews, Indiana. Bradley has resided at that address from approximately 1987 to the present, and previously resided at the Antioch Mobile Home Park in Andrews, Indiana, from approximately 1982 to 1987, at a home at the corner of California and Jackson Streets in Andrews, Indiana, from approximately 1977 to 1982, and at a house on Chestnut Street in Andrews, Indiana, when she was a child.

57.     Plaintiff Dick Reed is a resident of Huntington County, Indiana, and currently resides at 353 North Market Street, Andrews, Indiana. Reed has resided at that address from approximately 1987 to the present. Reed previously lived at a house on Jefferson Street in Andrews, Indiana, for approximately two years as a child, and lived at a house on Terrel Street in Indiana for approximately 10 years while in his 20s or 30s.

58.     Plaintiff John Harshbarger is a resident of Huntington County, Indiana, and currently resides at 617 North Jackson Street, Andrews, Indiana. Harshbarger has resided at that address from approximately 1978 to the present, and he previously resided at: 385 North Market Street, Andrews, Indiana, from approximately 1973 to 1975; 688 North Market Street, Andrews, Indiana, from approximately 1948 to 1952 and from 1956 to 1967; and 353 Washington Street, Andrews, Indiana, from approximately 1952 to 1956.

59.     Plaintiff Janice Harshbarger is a resident of Huntington County, Indiana, and currently resides at 617 North Jackson Street, Andrews, Indiana. Harshbarger has resided at that

address from approximately 1978 to the present, and she previously resided at: 385 North Market Street, Andrews, Indiana, from approximately 1973 to 1975; and 98 Snowden Street, Andrews, Indiana, from approximately 1964 to 1968.

60.     Plaintiff Anniah Marshall is a resident of Huntington County, Indiana, and currently resides at 617 North Jackson Street, Andrews, Indiana. Marshall has resided at that address from approximately 2015 to the present, and previously resided at 840 North Market Street in Andrews, Indiana, from approximately 2008 to 2015, and at 205 North Cubberly Street, Andrews, Indiana, from approximately 1999 to 2008.

61.     Plaintiff Dazi Marshall is a resident of Huntington County, Indiana, and currently resides at 617 North Jackson Street, Andrews, Indiana. Marshall has resided at that address from approximately 2015 to the present, and previously resided at 840 North Market Street in Andrews, Indiana, from approximately 2008 to 2015, and at 205 North Cubberly Street, Andrews, Indiana, from approximately 2006 to 2008.

62.     Plaintiff Jeff Marshall is a resident of Huntington County, Indiana, and currently resides at 9 Edith Boulevard, Huntington, Indiana. Marshall previously resided at 617 North Jackson Street, Andrews, Indiana, from approximately 2015 to 2017, at 840 North Market Street in Andrews, Indiana, from approximately 2008 to 2015, and at 205 North Cubberly Street, Andrews, Indiana, from approximately 1994 to 2008.

63.     Plaintiff Melinda Marshall is a resident of Huntington County, Indiana, and currently resides at 617 North Jackson Street, Andrews, Indiana. Marshall has resided at that address from approximately 1978 to 1992, and from 2015 to the present. She previously resided at: 840 North Market Street in Andrews, Indiana, from approximately 2008 to 2015; at 205 North Cubberly Street, Andrews, Indiana, from approximately 1994 to 2008; at a home on the

14

corner of Ruby and Market Streets in Andrews, Indiana, from approximately 1993 to 1994; and at 385 North Market Street in Andrews, Indiana, from approximately 1974 to 1975.

64.     Plaintiff Michael Slone is a resident of Huntington County, Indiana, and currently resides at 736 North Market Street, Andrews, Indiana. Slone has resided at that address from approximately 2014 to the present, and previously lived at houses on Snowden Street and Jefferson Street in Andrews, Indiana, during his childhood.

65.     Plaintiff Dennis Slone is a resident of Huntington County, Indiana, and currently resides at 736 North Market Street, Andrews, Indiana. Slone has resided at that address from approximately 2014 to the present.

66.     Plaintiff Sara Slone is a resident of Huntington County, Indiana, and currently resides at 736 North Market Street, Andrews, Indiana. Slone has resided at that address from approximately 2014 to the present.

67.     Plaintiff Anna Standafer is a resident of Huntington County, Indiana, and currently resides at 406 Hasty Street, Huntington, Indiana. Standafer previously resided at: 39 North Market Street, Andrews, Indiana, from approximately 1977 to 1978 and 2003 to 2011; 19 North Market Street, Andrews, Indiana, from approximately 1982 to 2003; 44 North Main Street, Andrews, Indiana, from approximately 1981 to 1982; 148 Jefferson Street, Andrews, Indiana, in approximately 1981; 436 Jackson Street, Andrews, Indiana, from approximately 1978 to 1981; at a home on the corner of California and Main in Andrews, Indiana, in approximately 1976; 22 Clifton Street, Andrews, Indiana, from approximately 1963 to 1964; and 44 North Main Street, Andrews, Indiana, from approximately 1962 to 1963.

68.     Plaintiff Brandon Standafer is a resident of Huntington County, Indiana, and currently resides at 406 Hasty Street, Huntington, Indiana. Standafer previously resided at: 39

15

North Market Street, Andrews, Indiana, from approximately 2009 to 2011; 19 North Market Street, Andrews, Indiana, in approximately 2008; and at a home on Snowden Street in Andrews, Indiana, from approximately 2003 to 2008.

69.     Plaintiff Haley Standafer is a resident of Huntington County, Indiana, and currently resides at 1004 North Broadway, Huntington, Indiana. Standafer previously resided at: 39 North Market Street, Andrews, Indiana, from approximately 2009 to 2011; 19 North Market Street, Andrews, Indiana, in approximately 2008; at a home on Snowden Street in Andrews, Indiana, from approximately 2003 to 2008; and at 148 Jefferson Street, Andrews, Indiana, from approximately 2001 to 2003.

70.     Plaintiff Allie Feltner is a resident of Huntington County, Indiana, and currently resides at 406 Hasty Street, Huntington, Indiana. Feltner previously resided at: 39 North Market Street, Andrews, Indiana, from approximately 2006 to 2011; at a house on the corner of Ruby and Main Streets in Andrews, Indiana, from approximately 2005 to 2006; 39 North Market Street, Andrews, Indiana, from approximately 2003 to 2005; at 19 North Market Street, Andrews, Indiana, from approximately 1995 to 2003.

71.     Plaintiff Angela Feltner is a resident of Paulding County, Ohio, and currently resides at 318 East Canal Street, Antwerp, Ohio. Feltner previously resided at: 791 North Main Street, Andrews, Indiana, from approximately 2005 to 2006; 19 North Market, Andrews, Indiana, from approximately 1982 to 1998 and 2001 to 2003; 17 South Market, Andrews, Indiana, from approximately 1999 to 2000; 44 North Main Street, Andrews, Indiana, from approximately 1981 to 1982; 148 North Jefferson, Andrews, Indiana, in approximately 1981; 436 North Jackson Street, Andrews, Indiana, from approximately 1978 to 1981; 39 North Market Street, Andrews, Indiana, from approximately 1977 to 1978; and a home on the corner of

16

California and Main Streets in Andrews, Indiana, from approximately 1975 to 1976.

72.     Plaintiff Tammy Eddingfield is a resident of Huntington County, Indiana, and currently resides at 632 Mayne Street, Huntington, Indiana. Eddingfield previously resided at: 148 East Jefferson Street, Andrews, Indiana, from approximately 1990 to 1998, except for two months during 1994; 39 North Market Street, Andrews, Indiana, from approximately 1988 to 1989; and 575 North Market Street, Andrews, Indiana, from approximately 1978 to 1982.

73.     Plaintiff Kelsy Roberts is a resident of Huntington County, Indiana, and currently resides at 800 Bartlett Street, Apt. 126, Huntington, Indiana. Roberts previously resided at 148 East Jefferson Street, Andrews, Indiana, from approximately 1992 to 1998, except for two months during 1994.

74.     Plaintiff Cory Feltner is a resident of Clermont County, Ohio, and currently resides at 95 Wooded Ridge Drive, Amelia, Ohio. Feltner resided at 148 East Jefferson Street, Andrews, Indiana, from approximately 1991 to 1998, except for two months during 1994.

75.     Plaintiff Selina Feltner is a resident of Huntington County, Indiana, and currently resides at 600 Bartlett Street, Apartment 35, Huntington, Indiana. Feltner previously resided at 148 East Jefferson Street, Andrews, Indiana, from approximately 1994 to 1998.

76.     Plaintiff Pamela Tackett is a resident of Huntington County, Indiana, and currently resides at 420 North Market Street, Andrews, Indiana. Tackett resided at that address from approximately 1963 to the present.

77.     Plaintiff Raymond Tackett is a resident of Huntington County, Indiana, and currently resides at 420 North Market Street, Andrews, Indiana. Tackett resided at that address from approximately 1963 to the present.

78.     Plaintiff Judith Wallace is a resident of Huntington County, Indiana, and currently

17

resides at 190 Wabash Avenue, Andrews, Indiana. Wallace has resided at that address from approximately 2007 to the present, and previously resided at 97 South Snowden Street, Andrews, Indiana, from approximately 1977 to 2007, 863 North Market Street, Andrews, Indiana, from approximately 1970 to 1977, and an apartment on Jackson Street in Andrews, Indiana, in approximately 1969.

79.     Plaintiff Russell Wallace is a resident of Huntington County, Indiana, and currently resides at 190 Wabash Avenue, Andrews, Indiana. Wallace has resided at that address from approximately 2007 to the present, and previously resided at 97 South Snowden Street, Andrews, Indiana, from approximately 1977 to 2007, 863 North Market Street, Andrews, Indiana, from approximately 1970 to 1977, and an apartment on Jackson Street in Andrews, Indiana, in approximately 1969.

80.     Plaintiff Brenda Roberson is a resident of Huntington County, Indiana, and currently resides at 1106 Henry Street, Huntington, Indiana. Roberson previously resided at: 816 North Main Street, Andrews, Indiana, from approximately 2011 to 2012; 97 Snowden Street, Andrews, Indiana, from approximately 1977 to 1993 and 2012 to 2014; 112 West Jefferson Street, Andrews, Indiana, from approximately 1998 to 2003; 87 McKeever Street, Andrews, Indiana, from approximately 1996 to 1998; and 863 Market Street, Andrews, Indiana, from approximately 1974 to 1977.

81.     Plaintiff Mark Walters is a resident of Huntington County, Indiana, and currently resides at 330 North Main Street Andrews, Indiana. Walters has resided at that address from approximately 1988 to the present.

82.     Plaintiff Town of Andrews, Indiana, is a unit of local government located in Huntington County, Indiana. The Town Hall is located at 66 North Main Street, Andrews,

18

Indiana.

### III.    THE DEFENDANTS

83.    Defendant Raytheon Technologies Corporation is a Delaware corporation, with its corporate office located at 870 Winter Street, Waltham, Massachusetts 02451, and is the successor by merger to United Technologies Corporation.

84.    Defendant Lear Corporation Eeds and Interiors, LLC is a Delaware corporation, with its corporate office located at 21557 Telegraph Road, Southfield, Michigan 48033, and is the successor to United Technologies Automotive, Inc.

85.    Defendant CP Product, LLC, is a Virginia limited liability corporation, with its corporate office located at 900 West South Boundary Street, Suite 8A, Perrysburg, Ohio, 43551, and is the successor to Preferred Technical Group, Inc.

86.    Defendant Andrews Dairy Store, Inc. is an Indiana corporation, with its principal office located at 138 Snowden Street, Andrews, Indiana 46702.

87.    Defendant L.D. Williams, Inc. is an Indiana corporation, with its principal office located at 155 North Main Street, Andrews, Indiana 46702.

88.    Defendant LDW Development, LLC, is an Indiana limited liability company, with its principal office located at 155 North Main Street, Andrews, Indiana, 46702.

### IV.    JURISDICTION AND VENUE

89.    The Defendants, individually and collectively, either engage or engaged in business in the State of Indiana; have caused personal injury by acts or omissions in the State of Indiana; have or are supplying services or have contracted to supply services rendered or to be rendered in the State of Indiana; and/or own, use, or possess real property or have interests in real property in the State of Indiana. As such, this Court has jurisdiction over this cause pursuant

to Indiana Trial Rules 4.4(A)(1), 4.4(A)(2), 4.4(A)(4), and 4.4(A)(5).

90.     The acts or omissions that are the subject of this Complaint occurred in Huntington County, Indiana. The principal offices of Defendants Andrews Dairy, LD Williams, and LDW Development are in Huntington County. Therefore, preferred venue lies in this county pursuant to Indiana Trial Rule 75(A)(4).

### V.     THE UTA FACILITY DEFENDANTS' TORTIOUS CONDUCT

91.     United Technologies Automotive ("UTA"), as successor to the Essex Wire Corp., formerly owned and operated a manufacturing facility located at 303 North Jackson Street, Andrews, Indiana (the "UTA Facility").

92.     UTA engaged in manufacturing various parts, equipment, and fittings for the automotive industry.

93.     UTA was owned and operated as a subsidiary of Defendant RTX until UTA was sold to Defendant Lear in 1999. At that time, UTA's name was changed to Lear Corporation Eeds and Interiors.

94.     In approximately 1992, UTA's business operations in Andrews were sold to Preferred Technical Group, Inc. ("PTG"). PTG purchased the building at the UTA Facility from UTC, and entered into a 99-year lease for the land beneath the UTA Facility.

95.     PTG was acquired by Echlin, Inc., a subsidiary of Dana Corporation, in a stock sale in 1994. Subsequently, PTG was succeeded by merger by CP Products, Inc. (formerly known as Coupled Products, Inc.), which was in turn succeeded by conversion by CP Product LLC.

96.     PTG and its successors, including CP Product, operated at the UTA Facility until approximately 2007.

20

97.     During the UTA Defendants' operations at the UTA Facility, chlorinated solvents, including TCE, a powerful degreaser, 1,1,1, trichloroethane ("1,1,1,-TCA"), perchloroethylene ("PCE," also known as "PERC" or tetrachloroethylene) were used and generated large amounts of waste.

98.     Manufacturing processes at the UTA Facility included use of a TCE vapor degreaser to clean metal parts. TCE frequently overflowed the degreaser pits designed to contain spills, causing the TCE to enter the soils and groundwater beneath the UTA Facility.

99.     Further, TCE in the vapor degreaser often boiled over, causing TCE vapors to overwhelm employees at the UTA Facility, and requiring the temporary evacuation of part or all of the UTA Facility.

100.    TCE and other hazardous chemicals, including petroleum products like mineral spirits and cutting oil, were released into the soils and groundwater at the UTA Facility.

101.    UTA employees were directed by their superiors, including the plant's engineering manager, to dump TCE and other contaminants, and otherwise dispose of chemicals in a manner that caused the soil and groundwater to become heavily contaminated.

102.    For instance, one former employee at the UTA Facility in charge of the TCE vapor degreaser testified in a deposition that he was required to clean out the degreaser at least once a week. Used TCE removed from the degreaser filled one to two 55-gallon drums. He was instructed by his supervisor to dump the drums of used TCE onto to the grassy area behind the plant.

103.    Other former UTA Facility employees were likewise instructed to dump, pour, or kick over barrels of TCE waste from the vapor degreaser and other hazardous chemicals onto the ground, rather than properly dispose of them.

21

104.    Employees at the UTA Facility who used small quantities of TCE and other chemicals were instructed by their supervisors to dispose of those chemicals by pouring them down floor drains.

105.    In addition, a former supervisor at the UTA Facility has testified in a federal court deposition that UTA Facility employees would use hoses and PVC pipes to drain a hazardous chemical holding tank onto a grassy area out behind the factory.

106.    The same supervisor has also testified that excess TCE from the degreaser was regularly allowed to drain directly into the floor drain in the washer pit.

107.    Employees at the UTA Facility also disposed of TCE and other hazardous chemicals at an informal "town dump" located near the Town of Andrews' municipal wellfield.

108.    For a period of approximately 1–2 years after PTG took over the UTA Facility, it continued to use TCE, and it continued to engage in the same improper disposal practices, causing additional releases of hazardous chemicals into the environment.

109.    In approximately 1994, when the TCE vapor degreaser was decommissioned at the UTA Facility, the remaining TCE was put in barrels and left out by the back of the property to rust.

110.    The improper disposal of TCE and other hazardous chemicals by UTA and PTG employees has created a plume of groundwater contamination, which extends approximately 3,000 feet to the southwest of the UTA Facility, under residential homes and other buildings in the Town, and has infiltrated the Town's municipal water supply and utility lines.

111.    In fact, the contamination is so severe that in 1994, a special piece of equipment (the "Air Stripper") had to be installed at the municipal well field because the hazardous chemicals have contaminated the town's drinking waters supply.

112.    The Air Stripper was intended to be temporary, to be used only until UTA's contamination was cleaned up.

113.    More than 25 years after the initial discovery of the contamination, the hazardous chemicals still remain at dangerous levels throughout the Town of Andrews.

114.    Dangerously high levels of TCE and other hazardous vapors exist in the sub-slab areas beneath homes and other structures in the Town, and UTA has no planned remediation of groundwater to properly and completely remove the source of those vapors.

115.    Moreover, vapors of TCE and other hazardous substances from the UTA Facility are currently transported throughout the Town through and along preferential pathways such as sewers, other utility lines, and drainage tiles. These vapors can enter, and, in fact, are continuing to enter structures, including the Andrews Town Hall, and pose a vapor intrusion risk to all structures served by public utilities.

116.    The TCE and vinyl chloride contamination from the underlying Chlorinated Plume continues to migrate from the UTA Facility and onto Plaintiffs' properties, and poses a risk to the homes and businesses within the Town.

117.    Despite the passage of more than 25 years as a "voluntary participant" in the Indiana Department of Environmental Management's Voluntary Remediation Program, RTX has never completed its Remediation Work Plan, sources at the UTA Facility have not been remediated, and the Town remains contaminated to unacceptable levels.

118.    RTX has admitted in sworn interrogatory answers in federal court litigation that it is responsible for contamination at the UTA Facility.

119.    Additionally, Lear is responsible for the contamination of the facility by virtue of its purchase of UTA in approximately 1999.

23

120.     CP Product is responsible for the contamination as successor to PTG.

121.     The UTA Defendants' tortious conduct in releasing hazardous chemicals to the environment, as well as their tortious conduct in failing to prevent those chemicals from leaving the UTA Facility, has and continues to damage the Plaintiffs, as described below.

## VI.     THE GAS STATION DEFENDANTS' TORTIOUS CONDUCT

122.     The Gas Station is a retail gasoline center and convenience store that has been in operation since the 1960s.

123.     In approximately 1987, Defendant Andrews Dairy was incorporated and began operating the gas station located at 155 North Main Street, Andrews, Indiana.

124.     In approximately 1992, Defendant L.D. Williams purchased the Gas Station and took over operations. However, Mike Burton (the principle and sole shareholder of Andrews Dairy) retained ownership of the land.

125.     In approximately 2007, Defendant LDW Development purchased the land from Mike Burton.

126.     The Gas Station operated four underground storage tanks ("USTs") – one 10,000-gallon gasoline tank, one 8,000-gallon gasoline tank, one 4,000-gallon diesel tank, and one 1,000-gallon kerosene tank. All four USTs were installed in 1979.

127.     The 1,000-gallon kerosene UST was removed on June 9, 1998. Upon information and belief, the other three USTs are still used today.

128.     Over the years, the Gas Station has had numerous releases of petroleum products into the subsurface soil, groundwater, and the Town's sewer system.

129.     For instance, in April 1993, gasoline released from the gas station traveled up the sewer line on Main Street nearly 1,800 feet and killed the bacteria at the Town's wastewater

24

treatment plant ("WWTP").

130.    In July 1993, the presence of gasoline fumes in the sewers was so strong that approximately 25 homes in the Town were evacuated due to the presence of petroleum vapors, and the 105 State Highway (Main Street) also had to be closed.

131.    At the Hysong residence, located at 819 N. Main Street, and approximately 1,800 feet north of the Gas Station, an emergency ventilation system had to be installed in the home to protect the family living there.

132.    Over the years, the Gas Station has released gasoline to the ground, the groundwater, and/or the Town's sewer system numerous times.

133.    In a recent environmental report, L.D. Williams's environmental consultant estimated that there was approximately 6,500 square feet of free petroleum product floating on top of the groundwater table in and around the Gas Station.

134.    The release of petroleum products, including gasoline, from the Gas Station, have resulted in a plume of soil and groundwater contamination that includes benzene, toluene, ethyl benzene, and xylene.

135.    In addition, on information and belief, an automobile repair business was operated at the Gas Station in the 1970s. The service station had a lift for performing work on cars and trucks. It is well known that historically, products used by automobile service stations such as brake cleaner and carburetor cleaner contained chlorinated solvents such as TCE.

136.    The toxic vapors from the free petroleum product, and from chlorinated solvent contamination, have in the past, and continue today, to migrate underground through preferential pathways such as utility lines, sewers, and drainage tiles, and contaminate the homes and buildings in the Town.

137.     The contamination from the underlying groundwater plume continues to migrate from the Gas Station onto Plaintiffs' properties, and poses a risk to the Plaintiffs and their property, and to the homes and businesses within the Town.

138.     The vapors from petroleum compounds, including benzene, emanating from the Gas Station present a current and significant danger to the Plaintiffs and to residents within the Town.

139.     Andrews Dairy has submitted numerous invoices to the Indiana Excess Liability Trust Fund ("ELTF") signed under the penalty for perjury, indicating that Andrews Dairy is responsible for the gasoline contamination.

140.     Additionally, L.D. Williams is responsible for the contamination because it has and continues to own and operate the Gas Station. The massive amount of free petroleum product at the Gas Station indicates that releases of gasoline have occurred at the Gas Station during the time that L.D. Williams has owned and operated it.

141.     During the time of its ownership, L.D. Williams has failed to prevent toxic vapors from the petroleum contamination, and from chlorinated solvent contamination, from leaving the gas station property, and those vapors have repeatedly entered the sewers and traveled throughout the Town, impacting Plaintiffs' homes.

142.     Defendant LDW Development is responsible for the contamination because it acquired the property in 2007, and failed to prevent the toxic vapors from the petroleum free product, and from chlorinated solvent contamination, from leaving the gas station property.

143.     Defendant LDW Development is responsible for the contamination because it acquired the property in 2007, and failed to prevent the toxic vapors from the petroleum free product, and from chlorinated solvent contamination, from leaving the gas station property.

26

144.    The Gas Station Defendants' tortious conduct in causing and allowing toxic vapors from petroleum products, and from chlorinated solvents, to repeatedly enter the Town of Andrews' sewer system and utility lines has and continues to damage the Plaintiffs, as described below.

## VII.    HEALTH RISKS FROM DEFENDANTS' CONTAMINATION

145.    The hazardous chemicals released by the Defendants have commingled and created a toxic, underground plume of contamination in the Town of Andrews.

146.    The toxic vapors that have traveled through the sewers and utility lines include, but are not limited to, hazardous chemicals such as TCE, vinyl chloride, and benzene.

147.    TCE is a chlorinated hydrocarbon that is classified by the United States Environmental Protection Agency ("USEPA") as "carcinogenic to humans" by all routes of exposure.

148.    Exposure to TCE is known to cause birth defects, damage to the nervous system, the kidneys, the liver, and the lungs, abnormal heartbeat, coma, and possibly death.

149.    TCE exposure has been associated with cancers like kidney cancer, liver and biliary cancer, and non-Hodgkin's lymphoma.

150.    On June 12, 2007, Dr. Thomas Sinks, Deputy Director of the Agency for Toxic Substances & Disease Registry and of the National Center for Environmental Health at the Centers for Disease Control and Prevention testified before a Congressional subcommittee concerning the toxic health effects of TCE.

151.    During his testimony, Dr. Sinks stated "[o]ccupational exposure to TCE may cause nervous system effects, kidney, liver and lung damage, abnormal heartbeat, coma, and possibly death" and "also has been associated with adult cancers such as kidney cancer, liver and

biliary cancer and non-Hodgkin's lymphoma."

152.    Vinyl chloride has been classified by the USEPA as a Group A known human carcinogen. Vinyl chloride cause cancer of the liver, and can also cause a variety of adverse central nervous system effects.

153.    Benzene is a known human carcinogen, considered by the USEPA to be carcinogenic by all routes of exposure

154.    Studies have linked benzene exposure to a number of cancers, including: leukemias, such as acute myelogenous, acute lymphocytic, acute erythroleukemic, acute undifferentiated, chronic lymphocytic, hairy cell, acute promyelocytic, chronic myelogenous; lymphomas, such as Hodgkin's lymphoma, non-Hodgkin's lymphoma, lymphosarcoma; and other cancers, such as multiple myeloma, reticulum cell sarcoma.

155.    The USEPA has stated that exposure to benzene vapors can cause neurologic, immunologic, and hematologic effects, and can also cause both structural and numerical chromosomal aberrations.

156.    Defendants' hazardous chemicals, including TCE, vinyl chloride, and benzene, have silently invaded their homes in the form of toxic vapors.

157.    The Plaintiffs were, and continue to be, exposed to Defendants' contamination, which has damaged and continues to damage them physically (including placing them at an increased risk of developing cancer or other illness and disease), mentally, and emotionally.

158.    The Plaintiffs and their family members have been exposed to and have inhaled Contamination vapors for an unknown period of time, and as a result, have suffered health problems.

159.    TCE and benzene present an especially serious health risk to children.

28

160.     The Contamination vapors that invaded the Plaintiffs' homes, as well as the contaminated groundwater, have interfered with the Plaintiffs' comfortable enjoyment of their homes, have reduced or eliminated their properties' market values, and have otherwise caused the Plaintiffs to suffer physical, emotional, and property damage.

161.     The presence of Defendants' TCE, vinyl chloride, benzene, and other petroleum chemicals on the Plaintiffs' property and within their homes constitutes an immediate human health risk, and has caused and, if continued, will cause additional irreparable harm for which money damages will be inadequate.

162.     Additionally, the Plaintiffs have suffered irreversible injury to their DNA and are now at an increased risk of developing cancer and other serious disease in the future as a result of exposure to TCE, benzene, and other human carcinogens.

## VIII.   VAPOR INTRUSION

163.     Plaintiffs own and reside in (or have resided in) homes (and in the case of the Town of Andrews, the Town Hall and other municipal buildings) located within the Town. Their homes and many other properties within the Town are connected to municipal sewer and utility lines, and have basements or crawl spaces composed of concrete, bare soil, or both.

164.     Groundwater underlying the UTA Facility and the Gas Station flows to the southwest, and directly through the Town.

165.     When contaminated groundwater underlies a home, the TCE and other hazardous chemicals may rise through the soil, through a process known as volatilization, to create harmful and sometimes deadly vapors. These vapors can then enter homes and other aboveground structures.

166.     Vapors from subsurface contamination can enter utility lines, such as sanitary

29

sewers, which act as preferential pathways to bring vapor contamination into homes and other buildings.

167.   Contamination from the UTA Facility and the Gas Station are current sources of toxic vapors throughout the Town. This contamination has infiltrated the Town's sewer lines and other utility lines. The Town's utility lines provide a preferential pathway for the liquid contamination as well, thereby enabling vapors to impact any structure connected to an infiltrated utility line, including the Andrews Town Hall.

168.   Dangerous vapors from the Defendants' contamination continue to be present in the indoor air of the Plaintiffs' homes and other structures in the Town.

169.   Defendants have not taken measures to adequately inform Town residents of the health risks associated with exposure to TCE, benzene, and other human carcinogens, or the potential duration of their exposure.

170.   Neither the Plaintiffs nor, on information and belief, other residents within the Town have been informed by Defendants of the past or present risk of vapors from the Defendants' contamination.

## IX.   CONTAMINATION OF THE TOWN'S DRINKING WATER

171.   The Town's municipal water supply is drawn from three shallow groundwater wells, located approximately 2,700 feet downgradient—*i.e.*, to the southwest—of the UTA Facility.

172.   Chlorinated solvents, their degradation products, and other harmful chemicals from the UTA Facility have entered the Town's public drinking water supply at both the public wellfield and potentially through the permeation of water mains.

173.   Cis-1,2-dichlorethene ("cis-1,2-DCE"), and vinyl chloride, both of which are

30

breakdown products of TCE, have been detected in groundwater from the Town's public wellfield.

174.     Vinyl chloride is a known human carcinogen.

175.     Cis-1,2-DCE is highly flammable and has shown subacute and subchronic toxicity in animal studies. The USEPA does not yet know if it causes cancer in humans.

176.     Petroleum from the Gas Station and/or the UTA Facility has entered the Town's public drinking supply both at the public wellfield and potentially through permeation of water mains.

177.     In 1994, due to the contamination present in the municipal water supply, UTA installed a water treatment system consisting of a packed tower air stripper, at the Town's wellhead.

178.     Groundwater is drawn from the Town's wells, combined in a holding tank, and passed through the air stripper. The water is then transferred to the Town's utility department's pump house, where it is put through sediment filters, is chlorinated, and is then pumped to the Town's water tower for distribution throughout the Town.

179.     Prior to the installation of the Air Stripper, the Town's drinking water was contaminated with hazardous chemicals including TCE and vinyl chloride, both of which are known human carcinogens.

180.     The air stripper installed by UTC does not remove all contamination from the Town's drinking water supply. In fact, cis-1,2-DCE continues to be found in the post-treatment drinking water supply.

181.     Since its installation, the air stripper has consistently been plagued with malfunctions and interruptions in service, leading to significant periods of down time. During

31

these periods of down time, the air stripper system is bypassed, causing untreated water from the Town's contaminated wells to be distributed to Town residents for consumption.

182.    Since 2012, Well #1 (referred to as WH-1 or PW-1), has been switched off due to concerns about contamination, odors, and foul taste from the water drawn from WH-1.

183.    Since that time, the Town has relied almost exclusively on Wells #2 and #3 (WH-2 and WH-3, respectively) for its drinking water, except for brief periods where those wells were being serviced, when leaks occurred in the water lines, or when the Town's Fire Department required additional water.

184.    However, due to a decreased output from WH-2 and WH-3 in early May 2020, the Town has recently had to resume use of WH-1 to supply its residents with drinking water.

185.    In early June 2020, the Town's Utilities Department became aware of yet another a significant disruption in the Air Stripper. The Town does not have access to the building housing the air stripper, and the Town is very concerned about untreated water being distributed to the Town due to the stripper's irregular and inconsistent operation.

186.    Neither the Plaintiffs, nor, on information and belief, other residents within the Town, have been informed by the Defendants of the past or present risk of drinking water contamination from chemicals released from the UTA Facility and/or the Gas Station.

## COUNT I – TRESPASS

187.    Plaintiffs hereby incorporate by reference the allegations set forth in each Paragraph above, as if fully restated herein.

188.    Defendants unlawfully interfered with the Plaintiffs' properties and rights by allowing or causing the contamination and associated vapors emanating from the releases at the UTA Facility and the Gas Station to enter the Plaintiffs' homes and by allowing or causing their

contamination to migrate onto the Plaintiffs' properties.

189.    Chlorinated and petroleum vapors continue to migrate from Defendants' respective properties and enter the Plaintiffs' properties and homes.

190.    The entry of contamination into the Plaintiffs' homes and onto their properties was and continues to be an unauthorized invasion and intrusion by Defendants onto the Plaintiffs' properties.

191.    Plaintiffs have suffered damages as a result of Defendants' unlawful interference with their properties and/or unauthorized invasion or intrusion of contamination onto their properties and into their homes.

192.    By causing or allowing the entry of contamination into the Plaintiffs' homes and by allowing or causing the migration of TCE, petroleum, and other human carcinogens onto the Plaintiffs' properties, Defendants have committed a trespass and are liable to the Plaintiffs for all damages caused by the trespass.

## COUNT II – NUISANCE

193.    Plaintiffs hereby incorporate by reference the allegations set forth in each Paragraph above, as if fully restated herein.

194.    The contamination that migrated, and continues to migrate from Defendants' respective properties, onto the Plaintiffs' properties and the associated vapors that entered, and continue to enter, the Plaintiffs' homes as a result of the releases at the UTA Facility and/or the Gas Station were injurious to the Plaintiffs' health, offensive to their senses, and an obstruction to their use and enjoyment of their properties. As such, the contamination and associated vapors unduly interfered with the Plaintiffs' use and comfortable enjoyment of their homes and properties.

195.     The Plaintiffs have suffered damages as a result of the Defendants' undue interference with their use and comfortable enjoyment of their homes and properties.

196.     Pursuant to Indiana Code §§ 32-30-6-6, -7 and -8: (a) the Defendants have created a nuisance by allowing or causing TCE, benzene, and other hazardous chemicals to enter Plaintiffs' properties and contamination vapors to enter Plaintiffs' homes; (b) Plaintiffs are entitled to relief abating and enjoining the nuisance; and (c) Defendants are liable to Plaintiffs for all damages arising out of the nuisance.

## COUNT III – NEGLIGENCE

197.     Plaintiffs hereby incorporate by reference the allegations set forth in each Paragraph above, as if fully restated herein.

198.     The Defendants owed a duty to the Plaintiffs, who reside in the Town, to use and dispose of chlorinated solvents, petroleum, and other hazardous chemicals in a manner that prevented the release of those chemicals into the environment, the spill or migration of chlorinated solvents, petroleum, and other hazardous chemicals onto the Plaintiffs' properties, and the migration of contamination into the Plaintiffs' homes.

199.     When the Defendants allowed the releases of chlorinated solvents, petroleum, and other hazardous chemicals at the UTA Facility and/or the Gas Station to occur and/or allowed or caused the migration of the contamination onto the Plaintiffs' properties and the entry of contamination vapors into the Plaintiffs' homes, the Defendants breached their duty to the Plaintiffs.

200.     The Defendants also owed a duty to the Plaintiffs to diligently remediate all known contamination in a timely and effective manner in order to protect human health and the environment, and to prevent the migration of the contamination onto the Plaintiffs' properties

34

and the entry of contamination vapors into the Plaintiffs' homes.

201.    When the Defendants repeatedly failed to identify or delineate the extent of off-site contamination and/or failed to remediate off-site contamination, the Defendants breached their duty to the Plaintiffs.

202.    As a result of the Defendants' breaches of their duties of reasonable care, Plaintiffs have suffered damages.

203.    The Defendants' breaches of their duties of reasonable care owed to the Plaintiffs have proximately caused Plaintiffs to suffer damages.

204.    The Defendants committed negligence through their acts or omissions relating to the releases at the UTA Facility and/or the Gas Station, and they are liable to the Plaintiffs for any and all damages arising out of this negligence.

### COUNT IV – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

205.    Plaintiffs hereby incorporate by reference the allegations set forth in each Paragraph above, as if fully restated herein.

206.    When the Plaintiffs were exposed to the chlorinated solvents, petroleum, other hazardous chemicals, and associated vapors that have invaded their homes, they sustained direct bodily impacts as a result of Defendants' negligence.

207.    By virtue of the Plaintiffs' direct involvement in that impact, they sustained serious emotional trauma of a type normally expected to occur in a reasonable person.

208.    The Defendants' acts and omissions with respect to the releases that impacted the Plaintiffs and caused them to suffer emotional distress constitute negligent infliction of emotional distress. Consequently, the Defendants are liable to the Plaintiffs for the resulting damages.

35

## COUNT V – NEGLIGENT FAILURE TO WARN

209.    Plaintiffs hereby incorporate by reference the allegations set forth in each Paragraph above, as if fully restated herein.

210.    Defendants knew that the contamination emanating from the UTA Facility and/or the Gas Station poses a risk to human health and the environment, and that Plaintiffs and their homes were and continue to be at risk for vapor intrusion due to the contamination migrating off-site

211.    Defendants owed a duty to Plaintiffs to warn them of the dangers posed by the contamination emanating from their respective facilities and migrating throughout the Town.

212.    Defendants breached this duty owed to Plaintiffs, in that they negligently failed to warn Plaintiffs regarding: their releases of contamination at the UTA Facility and/or the Gas Station; that their contamination has the potential to negatively impact human health; that their contamination has and continues to migrate off-site and into the Town; that the contamination has and continues to present a risk of vapor intrusion in Plaintiffs' homes; and that the contamination has and continues to present a risk to Plaintiffs who drink, cook, and bathe with the Town's public water.

213.    Defendants are liable to Plaintiffs for all damages proximately resulting from their negligent failure to warn.

## COUNT VI – ENVIRONMENTAL LEGAL ACTION

214.    Plaintiffs hereby incorporate by reference the allegations set forth in each Paragraph above, as if fully restated herein.

215.    Defendants caused the contamination of the Town by releasing chlorinated solvents, petroleum, and other hazardous chemicals into the environment during their operations,

36

and also contributed to the contamination by failing to prevent the off-site migration of chlorinated solvents, petroleum, and other hazardous chemicals and by failing to timely remediate the off-site contamination.

216.    The Defendants' contamination poses a risk to human health and the environment.

217.    Under Indiana Code §§ 13-30-9-2 and 13-30-9-3, the Plaintiffs are entitled to recover reasonable costs of removal or remedial action from Defendants, together with attorneys' fees and expenses.

## PUNITIVE DAMAGES

218.    Plaintiffs hereby incorporate by reference the allegations set forth in each Paragraph above, as if fully restated herein.

219.    UTC instructed its employees to dump containers of TCE onto the ground and into drains at the UTA facility, and to otherwise intentionally pour or dispose of hazardous chemicals into the unprotected environment.

220.    UTC knew that UTA's releases of TCE had migrated into the Town beginning at least in 1992.

221.    The Gas Station knew that its releases of benzene and other aromatic chemicals had migrated into the Town beginning at least in 1993.

222.    Despite the passage of over 20 years, approximately 6,500 square feet of gasoline free product remains on top of the groundwater at the Gas Station, serving as a constant source of vapor and groundwater contamination.

223.    Defendants knew or had reason to know that the contamination posed a risk to human health and the environment, especially to the residents of the Town.

224.    However, Defendants allowed the Contamination to persist in the Town for over

twenty (20) years and failed to adequately notify or warn current and former residents of

Contamination vapors.

225.    Defendants exhibited reckless disregard for the Plaintiffs' well-being, health, and

properties, as well as the well-being, health, and property of the general public, by failing to take

sufficient or effective action to remove the Contamination from the Town or to adequately notify

or warn current and former residents of the Contamination vapors and presence of

Contamination in the Town's drinking water supply.

226.    Based on Defendants' reckless disregard of the Plaintiffs' and the public's health,

well-being, and property, an award of punitive damages is appropriate to deter Defendants and

others from engaging in such a grossly negligent or reckless behavior in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against

Defendants and in favor of Plaintiffs, and that the Court:

A.    Order Defendants to pay Plaintiffs and an amount that will fully and

fairly compensate them for their past and prospective damages;[1]

C.    Order Defendants to pay Plaintiffs their reasonable attorneys' fees and costs,

including expert witness fees, of this litigation;

D.    Order the Defendants to upgrade the Town's water supply and treatment system,

including: installation of new water supply wells that are vertically or horizontally separated

from the Defendants' groundwater contamination; upgrading the air stripper system, including

and adding in redundancies; and in the interim, providing safe drinking water for the residents of

---

[1] Insofar as Plaintiffs' request for monetary damages includes damages to property, Plaintiffs intend to seek "stigma" damages—that is, damages for diminution in property damages even after the remediation of environmental contamination—at an appropriate time, once remediation has been substantially completed. *See, e.g.*, *Pflanz v. Foster*, 888 N.E.2d 756, 759 (Ind. 2008).

38

Andrews by supplying the residents with bottled water for drinking, cooking, and bathing.

     E.     Order the Defendants to remove the contamination, including all groundwater contamination and related vapors, that emanated from the UTA Facility and/or the Gas Station and now exists on the Plaintiffs' properties and in the Town's utility lines to non-detect levels;

     F.     Award punitive damages against Defendants;

     F.     Award Plaintiffs all other appropriate injunctive relief; and

     G.     Award Plaintiffs all further relief that is just and proper.

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury on all issues so triable.

Respectfully submitted,

/s/    Thomas A. Barnard
Thomas A. Barnard, Attorney No. 4011–49
Rodney L. Michael, Jr., Attorney No. 23681–49
Benjamin A. Wolowski, Attorney No. 33733–49
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204
Telephone: 317-713-3500
Fax: 317-713-3699

*Attorneys for the Plaintiffs*

27366204.1