UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| EDMOND ASHER, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) CASE NO.: 1:20-CV-000238-HAB |
| | ) |
| RAYTHEON TECHNOLOGIES CORP., | ) |
| f/k/a United Technologies Corp., LEAR | ) |
| CORPORATION EEDS AND INTERIORS, | ) |
| LLC as successor to United Technologies | ) |
| Automotive, Inc., ANDREWS DAIRY STORE, | ) |
| INC., L.D. WILLIAMS, INC., CP PRODUCT, | ) |
| LLC as successor to Preferred Technical Group, | ) |
| Inc., and LDW Development, LLC | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

The Town of Andrews, Indiana ("the Town") and 77 of its residents allege that their groundwater is contaminated and the Defendants are to blame. They brought suit in state court seeking compensatory and injunctive relief for the Defendants' trespass, nuisance, negligence, negligent infliction of emotional distress, negligent failure to warn, and violation of the Environmental Legal Action ("ELA"), Ind. Code §§ 13-30-9-2 and 13-30-9-3. (Compl. ¶¶ 187–217, ECF No. 10).

Believing this request was invoking injunctive relief only afforded by federal statute, specifically, the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), Defendants removed the case to this Court asserting the existence of a federal question. (Notice of Removal, ECF No. 1). Plaintiffs immediately responded with an "Emergency Motion to Remand" (ECF No. 8) asserting that the Defendants' removal is frivolous and intended to delay the

preliminary injunction hearing in state court. The Court expedited briefing on the Plaintiffs' remand motion, that briefing being completed on June 29, 2020. Along with its response to the motion, Defendants filed a "Motion to Sever Injunctive Relief Claim and Consolidate with *Milliman-Powell*" (ECF No. 12). For the following reasons the Plaintiffs' Emergency Motion to Remand will be GRANTED.  The Defendants' Motion to Sever and Consolidate will be DENIED as MOOT.

## BACKGROUND

### I.     Introduction

This is not these litigants' first rodeo nor their first go-round over the Town's groundwater supply. Presently pending in this Court is the consolidated case of *Milliman, et al. v. United Technologies Corporation,* 1:16-CV-312 (hereafter, "*Milliman-Powell*"), asserting many of the same claims at issue here along with a RCRA claim.[1] This newest action, as in *Milliman-Powell*, involves existing groundwater contamination in the Town that is alleged to have emanated, in part, from a manufacturing facility owned by a former subsidiary of Defendant Raytheon Technologies Corporation ("Raytheon"). Recent events in May 2020 sparked this latest action after the Town, due to decreased output from its non-contaminated wells, had to draw water from a contaminated one. While this is, without doubt, a gross oversimplification of the problems Plaintiffs allege (and which the Defendants dispute), they assert that by June 2020, the water had become unsafe for residential use.

---

[1] In that case, the plaintiffs sought to certify a class, which would have included the individual residents in the present case. This Court denied the request for class certification and the putative class members are now the Plaintiffs in the current suit. There is also another state suit alleging wrongful death claims against the Defendants, *Houlihan v. Raytheon Technologies Corp., et al,* Case No. 35C01-1803-CT-000144.

On its face, the Plaintiffs' Complaint seeks monetary damages for state law causes of action, with one exception; the Town requests injunctive relief, having identified such relief in the Complaint's prayer for relief and in a contemporaneously filed Motion for Preliminary Injunction in the state court. (Compl. at 38–39; Mot. for Prelim. Inj. at 5, ECF No. 1-3). Together the filings seek an order requiring Defendants to: (1) update the Town's water supply and treatment system, including the installation of new water supply wells; (2) upgrade the air stripper system; (3) immediately supply bottled drinking water for Town residents; and (4) remove the contamination. (*Id.*).

II. **Factual Background**

As alleged by Plaintiffs' Complaint, the Town is heavily contaminated with two plumes of subsurface contamination that have migrated across the Town and impacted the Plaintiffs' health and properties. (Compl. ¶¶ 1, 3–4, 145–186). One of the plumes of contamination, consisting primarily of the chlorinated solvent trichloroethylene ("TCE") originated at a manufacturing facility in the Town that until 1992, was owned and operated by United Technologies Automotive, Inc. ("UTA"), a former subsidiary of Raytheon. (*Id.* ¶¶ 91–121). In 1992, the operations at UTA's facility were sold to Preferred Technology Group, whose successor in interest is Defendant CP Product, LLC. (*Id.* ¶¶ 94–96).

The second plume, consisting primarily of gasoline and its constituents, originated at a gas station currently owned and operated by Defendants L.D. Williams, Inc. and LDW Development, LLC, and formerly owned by defendant Andrews Dairy Store, Inc. (Compl. ¶¶ 122–44). The gasoline station is situated to the southwest of the UTA facility.

The Town's sole source of drinking water is groundwater, supplied through three shallow municipal water supply wells. (hereafter, MW-1, MW-2, and MW-3) (Compl. ¶ 171; Aff. of James

Wells, ¶ 5, ECF No. 8-8). All three of these wells, particularly MW-1, have been impacted at one time or another with UTC's chemicals. (*Id.*). In 2012, the Town shut down MW-1 in response to taste and odor complaints from residents in addition to rising levels of contamination in that well. (Compl. ¶ 182; Aff. of John Harshbarger, ¶ 12–14, ECF No. 8-9). Subsequently, the Town relied solely on MW-2 and MW-3 to supply its residents with water. (Compl. ¶ 183). In the Spring of 2020, MW-2 and MW-3 lost capacity and were no longer able to supply the Town's water needs. (Compl. ¶ 184). As a result, in May 2020, the Town reactivated MW-1. (*Id.*; Harshbarger Aff. ¶ 16)

In 1994, the Indiana Department of Environmental Management ("IDEM") required UTC to install a treatment system intended to strip contaminants from the Town's drinking water after it has been pumped from the wells but before delivery to the residents. (Compl. ¶ 177; Wells Aff. ¶ 6). This system is known as an "air stripper." which Plaintiffs characterize as going "off-line without warning and with alarming frequency." (*Id.*). The Town depends on the air stripper to remove contaminants from the Town's wells before water is distributed to the public. (Harshbarger Aff. ¶ 17). During periods where the air stripper is off-line, the Town's residents are exposed to drinking water containing potentially dangerous levels of chemicals. (Wells Aff. ¶ 6).

In early June 2020, the air stripper experienced an interruption, causing the Town's clear well to overflow and sustain damage. (Harshbarger Aff. ¶¶ 18–19). On June 19, 2020, the Huntington County Emergency Management Agency issued a "Do Not Drink" advisory for the Town residents. (*Id.* ¶ 21). Since that time, the Town residents have not been able to use their water, and the Town has been supplying them with bottled water. (*Id.* ¶ 22).[2]

---

[2] The parties have advised in their most recent filings of some updates as to whether the Town's water is drinkable and whether the fire department has sufficient water to conduct its duties.

On the same date the "Do Not Drink" advisory went into effect, Plaintiffs filed their complaint in Huntington Superior Court along with their request for emergency injunctive relief. Based on their exposure to the contaminants and the associated vapors, Plaintiffs brought common law claims of trespass and nuisance (related to the unlawful interference of the contaminants with the Plaintiffs' properties), negligence (related to the Defendants' duty to remediate all contamination), negligent infliction of emotional distress (for "direct bodily impacts" as a result of negligence), and negligent failure to warn (related to the Defendants duty to warn them of the dangers posed by contamination). Additionally, they sought relief under the ELA to "recover reasonable costs of removal or remedial action from Defendants, together with attorneys' fees and expenses." (Compl. ¶ 217). The state court set the Plaintiffs' emergency motion for a hearing on June 25, 2020.

On June 24, 2020, the eve of the hearing to address the Plaintiffs' request for emergency relief, Defendants removed the action to this Court. As set out previously, this filing triggered the Plaintiffs' Emergency Motion to Remand and the request by Defendants to sever the Town's claim for injunctive relief from the other claims in the suit and consolidate it with the currently pending *Milliman-Powell* cause in this Court involving similar issues. It is to these motions the Court now turns.

## DISCUSSION

a. **Removal and Motion to Remand**

Unless Congress provides otherwise, a state claim can be removed to federal court only if the federal court has original jurisdiction. 28 U.S.C. § 1441(a); *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 474 (1998). This statutory right of removal provides the defendant with an opportunity to substitute his choice of forum for the plaintiff's original choice. *See* Wright and

Miller, 14C Fed. Prac. & Proc. Juris. § 3721 (Rev. 4th ed.). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). If the district court lacks subject matter jurisdiction, the action must be remanded to state court pursuant to 28 U.S.C. § 1447(c). *Id.*

Colliding head-first in this case are a dynamic duo of legal pleading doctrines: the "well-pleaded complaint" doctrine and the "artful complaint" doctrine. Ordinarily, absent diversity between the parties, a defendant may remove a suit to federal court only when the plaintiff's "well-pleaded complaint" raises a federal question. This "well-pleaded complaint" rule makes the plaintiff the "master of the claim," as he or she may avoid federal jurisdiction by pleading only under state law. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987); *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) ("[T]he party who brings a suit is master to decide what law he will rely upon.").

An "independent corollary" to the well-pleaded complaint rule is the "artful pleading" doctrine. Under this doctrine, "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Franchise Tax Bd. of the State of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 22 (1983). "Even though the plaintiff has artfully avoided any suggestion of a federal issue, removal is not defeated by the plaintiff's pleading skills in hiding the federal question." *Bernhard v. Whitney Nat. Bank*, 523 F.3d 546, 551 (5th Cir. 2008). If a plaintiff "artfully pleads" his complaint in this way, a federal court must allow removal even though no federal question appears on the face of the complaint. *Rivet,* 522 U.S. at 475.

Plaintiffs' complaint contains six causes of action, all of which are constructed as claims arising under state law. As "master" of their claims, the Plaintiffs resist the notion that they are

pleading any federal claims; instead, they declare that they have eschewed federal law by relying solely on state law but are seeking the full range of relief Indiana law provides, noting that "the trial court has full discretion to fashion equitable remedies that are complete and fair to all parties involved." *Hammes v. Frank,* 579 N.E.2d 1348, 1355 (Ind.Ct. App. 1991).

Defendants are not buying it. They removed the case here asserting that the Plaintiffs "artfully" omitted the federal question and that federal question jurisdiction exists because "the claim asserted by the Town of Andrews for which it seeks the preliminary injunction is a RCRA civil suit in substance, and the injunctive relief sought is in the form of traditional RCRA remedies, and tellingly is the same relief sought under the RCRA claim in the Milliman-Powell Action." (Notice of Removal, ¶ 13). They further point to Plaintiffs' parroting of specific RCRA language that the contamination "constitute[s] an imminent and substantial endangerment," *see* 42 U.S.C. §6972(a)(1)(B), to support the belief that the Complaint is a "repackaged RCRA" claim. Thus, the Defendants deduce that because the relief sought "walks like a duck and quacks like a duck," the underlying claim must be a duck, i.e., an RCRA claim, and federal question jurisdiction exists.

Under the well-pleaded complaint rule, a court will not find federal jurisdiction unless: (1) federal law creates one of the plaintiff's causes of action, or (2) the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law. *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 690 (2006); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 27–28 (1983) *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, (2005). In *Grable & Sons*, the Supreme Court explained that a "substantial question of federal law" exists if (1) there is a substantial and "actually disputed" federal issue, and (2) the exercise of federal jurisdiction will not disturb the "congressionally approved balance of federal and state judicial responsibilities." 545 U.S. 308, 314 (2005).

7

There is not much dispute that facially, the Complaint does not "arise under" federal law and federal law does not create any of the Plaintiffs' causes of action. Even so, if the facts alleged in support of an asserted state-law claim would *also* support a federal claim, the plaintiff may eschew the federal claim and remain in state court. *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.,* 535 U.S. 826, 831 (2002); *Caterpillar Inc.,* 482 U.S. at 398–99; *see also Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 12 (2003) ("A federal question 'is presented' when the complaint invokes federal law as the basis for relief. It does not suffice that the facts alleged in support of an asserted state-law claim would *also* support a federal claim."). Thus, had Plaintiffs chosen to seek relief under the ELA and could have also sought relief under the RCRA but opted not to do so, it would make no difference on the outcome here.

As for application of *Grable* to establish federal jurisdiction, the Defendants, with little development to their argument, assert that this is "precisely the kind of case the *Grable* doctrine was intended for" (ECF No. 13, p. 20). They state that "Plaintiffs' disguised state-law claim for injunctive relief necessarily raises a substantial and disputed federal issue on the face of their complaint, a RCRA citizen's claim … relating to the contamination of Andrews, Indiana." (*Id.*) Because an RCRA claim exists in the *Milliman-Powell* suit, they contend this necessarily is the same claim asserted here just formulated by different plaintiffs.

Plaintiffs respond that *Grable* has no application to this case and that far more is required to establish the existence of a "substantial question" Indeed, the Supreme Court recognizes that "it takes more than a federal element," *Grable,* 545 U.S at 313, and that it is only a "slim category" of cases that fall under *Grable*. *Empire,* 547 U.S. at 701. This Court agrees. Defendants have not established that the Complaint here relies in any way on a substantial and disputed federal issue.

On the face of the well-pleaded Complaint, Plaintiffs have asserted only state law causes of action, none of which necessarily depend upon the resolution of federal law. As master of their Complaint, Plaintiffs are allowed to pick their poisons; they are entitled to their forum of choice and to frame the nature of their claims and requested relief. That is precisely what the Plaintiffs have done here. But, Plaintiffs must be wary; this ability to shun federal claims and remain in state court can be perilous. If, as Defendants aggressively argue, the Plaintiffs are wrong that they may seek and obtain injunctive relief for their state law claims, they risk not obtaining all the relief they believe would make them whole. This, however, is something to be wrestled with through the state court process, not in federal court where no federal issue has been raised on the face of the well-pleaded complaint.[3]

Defendants had the burden to demonstrate the existence of original jurisdiction so as to make removal to this Court proper. They have not done so. Accordingly, the case will be remanded to Huntington Superior Court. The Emergency Motion to Remand is GRANTED.

b. **Attorneys Fee and Costs**

Plaintiffs also ask this Court to order the Defendants to reimburse them for the costs and attorneys' fees incurred as a result of the Defendants' improper removal. Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." In the absence of unusual circumstances, district courts may award attorney fees only where the removing party "lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005). In articulating this standard, the Supreme Court observed that "[t]he process of

---

[3] The parties spend a disproportionate amount of time quarreling about the availability of state law injunctive relief and debating the underlying merit of the Plaintiffs' request for injunctive relief. All of this lacks relevancy to the ultimate question here as to whether this Court has jurisdiction.

removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources." *Id.* at 140.

Having considered the filings of the parties along with the history of the litigation in this case, the Court does not find an award of fees appropriate. While ultimately unsuccessful in their quest, as discussed herein, the Defendants had an objectively reasonable basis for removal. The Plaintiffs' request for fees and costs is DENIED.

## **CONCLUSION**

Based on the foregoing, the Plaintiffs Emergency Motion to Remand (ECF No. 8) is GRANTED. The Plaintiffs request for attorneys' fees and costs is DENIED. Defendants' Motion to Sever and Consolidate (ECF No. 12) is DENIED as MOOT. This case is hereby REMANDED to the Huntington Superior Court consistent with this Opinion and Order.

So ORDERED on June 30, 2020.

            s/ *Holly A. Brady*
            JUDGE HOLLY A. BRADY
            UNITED STATES DISTRICT COURT